UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY, CAMDEN VICINAGE

| | |
|---|---|
| DYAN D'AVERSA, on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>           v.<br><br>PLAYTEX PRODUCTS, LLC, f/k/a PLAYTEX PRODUCTS, INC., EDGEWELL PERSONAL CARE COMPANY, and SUN PHARMACEUTICAL, LLC,<br><br>                              Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This is a proposed class action, brought on behalf of all those who purchased "**Banana Boat Kids SPF 50**" in the United States between June 27, 2010 and the present ("the Nationwide Class").

2. This action is also brought on behalf of a proposed sub-class composed of all those who purchased **"Banana Boat Kids SPF 50"** in New Jersey between June 27, 2010 and the present ("the New Jersey Sub-Class').

3. **"Banana Boat Kids SPF 50"** is a sunscreen product marketed by Defendants and sold at retails stores in New Jersey and across the country.

4. As outlined in greater detail herein, **"Banana Boat Kids SPF 50"** purports, in both the product name and in several prominent places on the product label, to have an "SPF" of 50, the maximum amount of SPF protection which the law allows a sunscreen product to claim.

5. "SPF," which stands for "Sun Protection Factor," is an objectively verifiable and scientifically measurable level of sunburn protection provided by a sunscreen. The higher the SPF, the more UV radiation is filtered out and the more protection is provided.

1

6. As outlined in greater detail herein, despite the inclusion of the words **"SPF 50"** in the name of the product itself, and despite the fact that the uniformly-worded product label states in several places that the product has an **"SPF 50,"** rigorous scientific testing has revealed that **"Banana Boat Kids SPF 50"** has an actual SPF of **only 8**; a significantly lower level of sunscreen protection.

7. Thus, each and every container of **"Banana Boat Kids SPF 50"** bears a uniformly-worded label which makes the same false, affirmative statements of fact regarding the SPC of this product.

8. Upon information and belief,  Defendants have been fully aware that **"Banana Boat Kids SPF 50"** has an actual SPF of only 8 since its inception.

9. This complaint seeks injunctive, declaratory and monetary relief for Plaintiff, the proposed Nationwide Class, and the proposed New Jersey Sub-Class, as outlined in greater detail herein.

## JURISDICTION AND VENUE

10. There is federal subject matter jurisdiction over this matter under the Class Action Fairness Act in that it is a proposed class action, there are more than 100 members of both the Nationwide Class and New Jersey Sub-Class, at least some class members and some Defendants are citizens of different states, and the amount in controversy is more than $5 million.

11. This matter is properly venued in the District of New Jersey, Camden Vicinage, in that Plaintiff purchased several containers of "Banana Boat Kids SPF 50" in Camden County, New Jersey, and Defendants conduct business in, inter alia, Camden County, New Jersey.

## THE PARTIES

12. Plaintiff Dyan D'Aversa resides in Burlington County, New Jersey.

2

13. Like all members of the proposed class, Plaintiff purchased **"Banana Boat Kids SPF 50"** in the United States between June 27, 2010 and the present. Like all members of the proposed New Jersey sub-class, Plaintiff purchased **"Banana Boat Kids SPF 50"** in New Jersey between June 27, 2010 and the present.

14. Specifically, Plaintiff purchased **"Banana Boat Kids SPF 50"** in stores located in Camden County New Jersey on several occasions during the proposed class period, including purchases of both the 8 ounce tube of **"Banana Boat Kids SPF 50"** and the 12 ounce "family size" pump spray of **"Banana Boat Kids SPF 50."**  Among these was a purchase that occurred on or about April 20, 2016, when Plaintiff purchased an 8 ounce tube of **"Banana Boat Kids SPF 50"** for $10.79 at the CVS store located at 180 Greentree Road, Evesham Township, New Jersey.

15.  Defendant Edgewell Personal Care Company ("Edgewell") is a Delaware corporation with its headquarters and principal place of business located in Shelton, Connecticut. Edgewell manufactures and markets "Banana Boat Kids SPF 50."

16. Defendant Playtex Products LLC ("Playtex") is a Delaware corporation with its headquarters and principal place of business located in Shelton, Connecticut. Playtex claims, lists and markets **"Banana Boat Kids SPF 50"** as one of its brands. Playtex is a subsidiary of Edgewell.

17. Defendant Sun Pharmaceuticals ("Sun") is a Delaware limited liability company with its headquarters and principal place of business located in Dover, Delaware. Sun is a subsidiary of Edgewell.

18. Together, Defendants Edgewell, Playtex and Sun jointly manufactured, distributed,

advertised, labeled and sold **"Banana Boat Kids SPF 50"** in both New Jersey and throughout
the United States, with each defendant jointly determining that each such container of the
product would bear the name **""Banana Boat Kids SPF 50"** and would list **"SPF 50"** on each
uniformly-worded product label.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a
Nationwide Class defined as:

> **All persons who, between June 27, 2010 and the present,
> purchased one or more containers of "Banana Boat Kids SPF
> 50" in the United States.**

20. Plaintiff also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf
of a New Jersey Sub-Class defined as:

> **All persons who, between June 27, 2010 and the present,
> purchased one or more containers of "Banana Boat Kids SPF
> 50" in New Jersey.**

21. The members of the class and sub-class for whose benefit this action is brought are so
numerous that joinder of all members is impracticable.

22. Upon information and belief, the proposed Nationwide Class is composed of over
100,000 persons and the proposed New Jersey Sub-Class is composed of at least 5,000 persons.

23. No violations alleged in this complaint are a result of any oral communications or
individualized interaction of any kind between class members and Defendants.

24. Rather, all claims in this matter arise from the identical, false, written affirmative
statements on the product label as outlined in detail herein.

25. There are common questions of law and fact affecting the rights of all Nationwide Class
members, including, <u>inter alia</u>, the following:

4

a. What is the actual SPF of "Banana Boat Kids SPF 50";

b. Whether Defendants' act in naming the product "Banana Boat Kids SPF 50" was a false, affirmative statement of fact;

c. Whether Defendants' act in placing a uniform written statement on the label of the product, stating "SPF 50" was a false, affirmative statement of fact;

d. Whether each Defendant was aware that "Banana Boat Kids SPF 50" had an SPF of only 8; and

e. The date each Defendant became aware that "Banana Boat Kids SPF 50" had an SPF of only 8.

26. In addition, there are common questions of law and fact affecting the rights of all New Jersey Sub-Class members, including, inter alia, the following:

a. Whether Defendants' action, in naming the product "Banana Boat Kids SPF 50" was a misleading sales practice in the sale of goods in violation of N.J.S.A. 56:8-2 of the New Jersey Consumer Fraud Act;

b. Whether Defendants' action, in placing a uniform written statement listing "SPF 50" on the product label, was a false, affirmative statement of fact in the sale of goods in violation of N.J.S.A. 56:8-2 of the New Jersey Consumer Fraud Act;

c. Whether Defendants' action in placing the words "SPF 50" on the product label constituted an express warranty under New Jersey law;

d. Whether, by the facts alleged herein, Defendants have breached an express warranty under New Jersey law;

e. Whether the label on "Banana Boat Kids SPF 50" was a consumer notice or warranty within the meaning of the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

f. Whether Defendants' actions, as described herein, violated the New Jersey Truth in Consumer Contract, Warranty and Notice Act;

g. Whether an implied contract relating to the sale of "Banana Boat Kids SPF 50" existed under New Jersey common law between Defendants and each member of the New Jersey Sub-Class; and

      h.  **Whether, by placing false statements of fact on the "Banana Boat Kids SPF 50" label, as described herein, Defendants breached the implied duty of good faith and fair dealing which was part of the implied contract of sale between Defendants and each member of the New Jersey Sub-Class.**

27. Plaintiff is a member of the class and sub-class he seeks to represent.

28. The claims of Plaintiff are not only typical of all class and sub-class members, they are identical.

29. All claims of Plaintiff and the class and sub-class arise from the same identical, false, written statement of affirmative fact on the **"Banana Boat Kids SPF 50"** label as described herein.

30. All claims of Plaintiff and the class are based on the same legal theories.

31. Plaintiff has no interest antagonistic to, or in conflict with, the class or sub-class.

32. Plaintiff will thoroughly and adequately protect the interests of the class and sub-class, having retained qualified and competent legal counsel to represent herself and the class and sub-class.

33. Defendants have acted and refused to act on grounds generally applicable to the class and sub-class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

34. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

35. A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member were less than $10 per container purchased and, as such, individual actions are not economically feasible.

36. Common questions will predominate, and there will be no unusual manageability issues.

## FACTUAL ALLEGATIONS

37.  SPF---which stands for Sun Protection Factor—is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

38. The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

39. Thus, SPF 50 will allow a person to stay in the sun 50 times longer without burning than if that person were wearing no protection at all.

40. Under FDA regulations, the highest SPF a product may claim is 50.

41. Defendants are in the business of manufacturing, distributing, marketing, and selling, inter alia, **"Banana Boat Kids SPF 50."**

42.  **"Banana Boat Kids SPF 50"** is a sunscreen product, sold by Defendants in tens of thousands of stores across the United States, including  several thousand in New Jersey.

43. Since the initial offering of **"Banana Boat Kids SPF 50,"**each and every label on this product has borne a uniformly-worded label which identifies the name of the product in large letters on the front as **"Banana Boat Kids SPF 50"** as depicted in Figures 1 and 2, below.

**Figure 1**



**Figure 2**



44. Since the initial offering of **"Banana Boat Kids SPF 50,"** each and every label on this product has borne a uniformly-worded label which includes, <u>inter alia</u>, the words **"SPF 50"** on the rear label of the product, as depicted in Figures 3 and 4, below.

**Figure 3**



**Figure 4**



45. In actuality, rigorous scientific testing, conducted in compliance with the FDA final rule on SPF testing and labeling set forth in 21 CFR 201.327, has revealed that **"Banana Boat Kids SPF 50"** <u>**does not**</u> provide an SPF of 50.

9

46. Such testing includes, but is not limited to, testing conducted by the noted consumer protection periodical Consumer Reports, which reported in May of 2016 that its own testing had revealed that **"Banana Boat Kids SPF 50"** had an <u>SPF of only</u> 8 and stated **"the most problematic products were Banana Boat Kids Tear-Free, Sting-Free Lotion…which [was] labeled as SPF 50 but [was] found to have only SPF 8."**

47. An SPF of 8 offers significantly less sunscreen protection than an SPF of 50.

48. An SPF of 8 is considered a low level of sunscreen protection; allowing users to remain in the sun without damage for a significantly shorter period than an SPC 50 would allow.

49. Defendants, as developers, manufacturers, and exclusive sellers and distributors of **"Banana Boat Kids SPF 50"** have been aware since the product's inception, that the true SPF of this product was much lower than 50.

50. Despite this, Defendants purposely claimed the highest SPF factor which may lawfully be claimed in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF.

**COUNT I**

**BREACH OF WARRANTY**

**<u>On Behalf of the Nationwide Class</u>**

51. Defendants sold **"Banana Boat Kids SPF 50"** in their regular course of business.

52. Plaintiff and the members of the Nationwide Class purchased **"Banana Boat Kids SPF 50."**

53. The written, uniformly-worded label on thus product (as depicted herein) constituted an

express warranty provided to all purchasers of **"Banana Boat Kids SPF 50"** under the law of each state in the United States in which the product was sold.

54. Defendants' written affirmations of fact, promises, and/or descriptions on the product label were part of that express warranty under the laws of each state in the United States in which the product was sold.

55. By the acts alleged herein, Defendants breached that warranty because the product did not contain the properties Defendants represented on the label.

56. The false information provided on the label was undiscoverable to Plaintiff and the members of the Nationwide Class at the time of purchase of **"Banana Boat Kids SPF 50."**

57. All conditions precedent to seeking liability under this claim for breach of warranty have been performed by or on behalf of Plaintiff and the members of the Nationwide Class in terms of paying for the goods at issue.

58. Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of warranty.

59. Defendants were on notice of their breaches of warranty and have refused to remedy such breaches.

60. By placing the product into the stream of commerce, by operation of law including, without limitation, Ariz. Rev. Stat. Ann. § 47-2314, et seq., Fla. Stat. § 672.314, et seq., Cal. Civ. Code § 1791, et seq., 810 ILCS 5/2-314, et seq., Mass Gen. Laws Ann. Ch. 106, §§ 2–314 – 318, N.J. Stat. Ann. § 12A:2-314, et seq., N.Y. U.C.C. § 2-314, et seq., 13 Pa. Cons. Stat. Ann. § 2314, et seq., and Tex. Bus. & Com. Code § 2.314, et seq., Defendants also impliedly warranted to Plaintiff and the members of the Nationwide Class that the product was accurately labeled in conformance with the law.

11

61. Defendants' breaches of warranty have caused Plaintiff and the members of the Nationwide Class to suffer injuries by paying for falsely labeled products. As a direct and proximate result of Defendants' breaches of warranty, Plaintiff and the members of the Nationwide Class have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the Product as promised and the value of the Product as delivered.

62. As a result of the breach of these warranties, Plaintiff and the members of the Nationwide Class are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II

### UNJUST ENRICHMENT

#### On Behalf of the Nationwide Class

63. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

64. Plaintiff and the members of the Nationwide Class have conferred substantial benefits on Defendants by purchasing **"Banana Boat Kids SPF 50,"** and Defendants have knowingly and willingly accepted and enjoyed these benefits.

65. Defendants either knew or should have known that the payments rendered by Plaintiff and the members of the Nationwide Class were given and received with the expectation that the product would be as represented and warranted.

66. Under the common law of unjust enrichment in every state in the United States

12

where the product was sold, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances and such retention constitutes unjust enrichment.

67. Under the law of every state in the United States where **"Banana Boat Kids SPF 50"** was sold, both law and equity demand disgorgement of Defendants' ill-gotten gains.

68. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the members of the Nationwide Class are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants.

## COUNT III

## NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1 et seq.

### On Behalf of the New Jersey Sub-Class Only

69. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

70. This action does not raise any claims of common law fraud.

71. This action does not raise any federal claims.

72. The New Jersey Consumer Fraud Act clearly applies to all sales of **"Banana Boat Kids SPF 50"** sold in stores located in New Jersey.

73. The New Jersey Consumer Fraud Act ("CFA") was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 298 N.J. Super. 491, 500 (App. Div. 1997).

74. The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, 182 N.J. 1, 11-12 (2004) **("The Consumer Fraud Act**

is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.**")**.

75. With regard to the CFA, **"[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 203 N.J. Super. 315, 319 (App. Div. 1986).

76. For this reason, the **"history of the Act is one of constant expansion of consumer protection."** Kavky v. Herballife International of America, 359 N.J. Super. 497, 504 (App. Div. 2003).

77. The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v. Beneficial Management Corp., 150 N.J. 255, 263 (1997).

78. Specifically, N.J.S.A. 56:8-2 of the CFA prohibits **"unlawful practices,"** which are defined as:

> **"The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."**

79. The catch-all term **"unconscionable commercial practice"** was added to the CFA by amendment in 1971 to ensure that the Act covered, inter alia, **"incomplete disclosures."** Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 472 (App. Div. 1982).

80. In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994).

14

81. **"Banana Boat Kids SPF 50"** is a "credence good," because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. See Lee v. Carter-Reed Co., L.L.C. 203 N.J. 496, 522 (2010). See also Richard A. Posner, An Economic Approach to the Law of Evidence, 51 Stan. L.Rev. 1477, 1489 (1999) **("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'")**.

82. The New Jersey Supreme Court in Lee v. Carter-Reed Co., L.L.C. 203 N.J. 496, 522 (2010), spoke regarding the relationship between dishonest product labeling and credence goods, stating:

> **"A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."**

83. In order to state a cause of action under the CFA, a plaintiff does not need to show reliance by the consumer. See Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance is not required in suits under the CFA because liability results from **"misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'"**).

84. Rather, the CFA requires merely a causal nexus between the false statement and the purchase, not actual reliance. See Lee v. Carter-Reed Co., L.L.C. 203 N.J. 496, 522 (2010) **("causation under the CFA is not the equivalent of reliance")**.

85. As stated by the New Jersey Supreme Court in Lee, 203 N.J. at 528:

> **"It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss."**

86. The purchase of a credence good, where the label on the product contains false misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the CFA. See Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496 (2010). See also Varcallo, at *49 (**"the purchase of the policy by a person who was shown the literature would be sufficient to establish prima facie proof of causation."**).

87. By the acts alleged herein, Defendants have violated the CFA.

88. Specifically, Defendants have made identical, false, written, misstatements of affirmative fact on the label of each container of the product sold in New Jersey, as outlined previously.

89. These statements were false when made and Defendants knew that these statements were false when made.

90. As a result of these false, written affirmative misstatements of material fact, Plaintiff and the New Jersey Sub-Class have suffered an ascertainable loss of money.

91. Specifically, Plaintiff and the New Jersey Sub-Class have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff and the New Jersey Sub-Class received something less than what was represented by Defendants on the product's label.

## COUNT IV

### NEW JERSEY BREACH OF EXPRESS WARRANTY

### On Behalf of the New Jersey Sub-Class Only

92. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

93. By operation of New Jersey law, Defendants entered into a contract with each New Jersey Sub-Class member when the member purchased a container of **"Banana Boat Kids SPF 50"** in New Jersey.

94. By operation of New Jersey law, the terms of this contract included an express warranty incorporating the identical affirmation, promise and description by Defendants regarding **"Banana Boat Kids SPF 50"** made in writing on the product label, which stated that the good contained **"SPF 50."**

95. The relevant terms and language of the express warranty between Defendants and each member of the New Jersey Sub-Class are identical.

96. Defendants have breached the terms of this express warranty in an identical manner for each New Jersey Sub-class member because **"Banana Boat Kids SPF 50"** did not and could not conform to the affirmation, promise and description on this label because, in fact, the product actually contained an SPF of only 8.

97. As a direct and proximate result of this breach of express warranty by Defendants, each member of the New Jersey Sub-Class has suffered economic loss.

<u>COUNT V</u>

**NEW JERSEY BREACH OF IMPLIED CONTRACT/VIOLATION OF COVENANT OF GOOD FAITH AND FAIR DEALING**

**<u>On Behalf of the New Jersey Sub-Class Only</u>**

98. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

99. By operation of New Jersey law, there existed an implied contract for the sale of

**"Banana Boat Kids SPF 50"** between Defendants and each member of the New Jersey Sub-Class who purchased the product in New Jersey.

      100.     By operation of New Jersey law, there existed an implied duty of good faith and fair

dealing in each such contract.

      101.     By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each class member.

      102.     As a result of that breach, Plaintiff and each class member suffered damages.

**COUNT VI**

**NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT N.J.S.A. 56:12-14 et seq.**

**On Behalf of the New Jersey Sub-Class Only**

      103.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

      104.  Plaintiff and the members of the New Jersey Sub-Class are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

      105.  Defendants are "sellers" within the meaning of N.J.S.A. 56:12-15 and 16.

      106.  The product label on **""Banana Boat Kids SPF 50"** is both a consumer "notice" and "warranty" within the meaning of N.J.S.A. 56:12-15 and 16.

      107.  By the acts alleged herein, Defendants have violated N.J.S.A. 56:12-16 because, in the course of Defendants' business, Defendants have offered written consumer notices and warranties to Plaintiff and the New Jersey Sub-Class which contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. 56:12-15.

108.  Pursuant to <u>N.J.S.A.</u> 56:12-17, this class complaint seeks a statutory penalty of $100 for each class member, as well as actual damages and attorney's fees and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff asks this court to:

   a. Certify the proposed Nationwide Class and New Jersey Sub-Class a class actions pursuant to Fed.R.Civ.P. 23;

   b. Enter an order for injunctive and declaratory relief as described herein;

   c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

   d. Award plaintiff reasonable attorneys' fees and costs;

   e. Award plaintiff and the class treble damages;

   f.  Award each New Jersey Sub-Class member a $100 statutory penalty under <u>N.J.S.A.</u> 56:12-17; and

   g.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

DeNITTIS OSEFCHEN, P.C.


By:     *s/Stephen P. DeNittis*
        STEPHEN P. DENITTIS
        JOSEPH A. OSEFCHEN

Dated:  June 26, 2016